FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 19, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

ROWEL R.,[1]

           Plaintiff,

    v.

FRANK BISIGNANO,
Commissioner of Social Security,[2]

           Defendant.

No.  1:24-cv-03197-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR FURTHER PROCEEDINGS**

Due to obesity, degenerative disc disease, right knee pain and swelling, vertigo, sleep disorders, hypertension, asthma, chronic

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

[2] Frank Bisignano was confirmed as the Commissioner of Social Security on May 6, 2025. Pursuant to Federal Rule of Civil Procedure 25(d) and 42 U.S.C. § 405(g), he is hereby substituted as the Defendant.

obstructive pulmonary disease, depression, and anxiety, Plaintiff Rowel R. claims he is unable to work fulltime and applied for social-security benefits. He appeals the denial of benefits by the Administrative Law Judge (ALJ) on the grounds that the ALJ erred at step two in not finding his depression and anxiety to be severe impairments, erred at steps four and five, improperly analyzed credibility of Plaintiff's subjective complaints, and improperly evaluated the medical opinion evidence. As is explained below, the ALJ erred. This matter is remanded for further proceedings.

## I.    Background

In May 2021, Plaintiff filed an application for benefits under Title 16, and in July 2021, Plaintiff filed an application for benefits under Title 2, claiming disability beginning September 14, 2020, based on the physical impairments noted above.[3]

After the agency denied Plaintiff benefits, ALJ David Johnson held a telephone hearing in April 2024, at which Plaintiff and a

---

[3] AR 200, 210, 247.

vocational expert testified.[4] After the hearing, the ALJ issued a decision denying benefits.[5] The ALJ found Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and the other evidence.[6] As to medical opinions, the ALJ found:

- The opinions of state agency evaluator Matthew Comrie, PsyD, to be persuasive.

- The opinions of state agency evaluator Rita F., PhD, to be less persuasive.

- The opinions of DSHS consultative examiner David Morgan, PhD to be not persuasive.[7]

- The February 2023 opinions of treating source Tim Ausink, PASUP, to be somewhat persuasive.

---

[4] AR 37-69.

[5] AR 14-36.  Per 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)-(g) a five-step evaluation determines whether a claimant is disabled.

[6] AR 24-26.

[7] AR 21-22.

- The June 2023 opinions of treating source Tim Ausink, PASUP, to be not persuasive.

- The opinions of consultative examiner Marquetta Washington, ARNP, to be somewhat persuasive.

- The opinions of DSHS reviewing source Myrna Palasi, MD, to be persuasive.

- The opinions of state agency evaluator Dennis Kopukol, MD, to be not persuasive.

- The opinions of state agency evaluator Gordon H., MD, to be more persuasive.[8]

The ALJ also considered the third-party function report completed by Plaintiff's mother and found it to be not consistent with the record.[9]

As to the sequential disability analysis, the ALJ found:

- Plaintiff met the insured status requirements of the Social Security Act through December 31, 2025.

---

[8] AR 27-28.

[9] AR 28-29.

- Step one: Plaintiff had not engaged in substantial gainful activity since September 14, 2020, the alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairments: obesity, degenerative disc disease, right knee edema, vertigo, sleep disorders, hypertension, asthma, and chronic obstructive pulmonary disease.

- Also at step two, the ALJ found Plaintiff's mental impairments to be non-severe.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC:  Plaintiff had the RFC to perform a full range of sedentary work that:

    does not require climbing of ladders, ropes, or scaffolds; that does not require more than occasional, stooping, kneeling, crouching, crawling, or climbing of ramps or stairs; that does not require concentrated exposure to pulmonary irritants; and that does not require exposure to hazards, open machinery, or unprotected heights.

- Step four: Plaintiff was capable of performing past relevant work as a system surveillance monitor.

- Step five: in addition to past relevant work the undersigned can perform other work available in the general economy.[10]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[11]

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error,"[12] and such error impacted the nondisability determination.[13] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such

_____

[10] AR 18-30.

[11] AR 275.

[12] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g).

[13] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[14]

## III.  Analysis

Plaintiff seeks relief from the denial of disability on four grounds. He argues the ALJ erred at step four when he found Plaintiff capable of performing past relevant work, at step two when he found his mental impairments non-severe, when evaluating Plaintiff's subjective complaints, and when evaluating the medical opinion evidence.  The Commissioner argues there was no error because the ALJ's step-four findings were proper and he offered alternate findings at step five, that

---

[14] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

the ALJ properly found Plaintiff's mental impairments were not severe, that the ALJ properly evaluated Plaintiff's subjective complaints, and that the ALJ properly considered the medical opinion evidence. The Court determines the ALJ erred at step four and that this error impacted the ALJ's nondisability finding. Due to the step-four error, along with an error at step two, the Court remands this matter for further proceedings without addressing the remaining arguments.

## A.    Step Four (Vocational Expert Testimony): Plaintiff establishes consequential error.

Plaintiff argues that the ALJ erred in relying upon the vocational expert (VE) testimony to find that Plaintiff could return to his past work because the VE later testified that he had offered an incorrect sedentary job as past relevant work, based on Plaintiff's testimony that he walked up to three hours and lifted up to 100 pounds.[15]  The Commissioner argues that the ALJ properly found that Plaintiff's PRW

---

[15] ECF No. 8.

was sedentary and that there was no harm because he offered an alternate step five finding.[16]

### 1. Standard

At step four of the sequential evaluation process, a claimant bears the burden of proving that he can no longer perform his past relevant work (PRW).[17] Notwithstanding the claimant's burden at this step, the ALJ still has a duty to make the requisite factual findings to support his conclusion regarding the claimant's ability to perform PRW.[18] The ALJ considers the claimant's background and RFC, along with the testimony of the vocational expert, to decide whether the claimant can perform available jobs notwithstanding his functional limitations.[19]

---

[16] ECF No. 9.

[17] *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001).

[18] *Id.*

[19] 20 C.F.R. §§ 404.1520(g), 404.1560(c); *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Hill*, 698 F.3d at 1161.

A claimant must be able to perform "[t]he actual functional demands and job duties of a particular past relevant job" or "[t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy."[20] Accordingly, the ALJ must make specific findings as to 1) the claimant's RFC, 2) the physical and mental demands of the PRW, 3) and the relation of the RFC to the PRW.[21] The ALJ need only make findings as to either actual or general performance of PRW, but not both.[22] The ALJ should generally consider first whether a claimant can perform his PRW as actually performed and then as generally performed.[23] An ALJ may rely on two sources to define a claimant's PRW as actually performed: "a properly completed vocational report . .

_____

[20] *Id.* at 845 (citation omitted).

[21] *Id.*

[22] *Id.* ("We have never required explicit findings at step four regarding a claimant's [PRW] both as generally performed and as actually performed.").

[23] *Id.*

. and the claimant's own testimony."[24] The best source for how a job is generally performed is the Dictionary of Occupational Titles (the "*Dictionary*" or "DOT").[25]]

If the vocational expert's "opinion that the applicant is able to work conflicts with, or seems to conflict with, the requirements listed in the *Dictionary*, then the ALJ must ask the expert to reconcile the conflict before relying on the expert to decide if the claimant is disabled":[26]

> For a difference between an expert's testimony and the *Dictionary's* listings to be fairly characterized as a conflict, it must be obvious or apparent. This means that the testimony must be at odds with the *Dictionary's* listing of job requirements that are essential, integral, or expected. This is not to say that ALJs are free to disregard the *Dictionary's* definitions or take them with a grain of salt—they aren't. But tasks that aren't essential, integral, or expected parts of a job are less likely to qualify as apparent conflicts that the ALJ must ask about. Likewise,

---

[24] *Id.*

[25] *Id.* at 845–46; *see also* Social Security Ruling ("SSR") 00–4p, 2000 WL 1898704, at *2 (noting that "we rely primarily on the DOT ... for information about the requirements of work in the national economy").

[26] *Gutierrez v. Colvin,* 844 F.3d 804, 807 (9th Cir. 2016).

where the job itself is a familiar one—like cashiering—less scrutiny by the ALJ is required.[27]

The ALJ—and the reviewing court—are to consider not only the *Dictionary* and its supplement, *Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles* (SCO), but also common experience, to determine whether there is an apparent conflict.[28]

2.     The ALJ's Findings

Here, the ALJ found that Plaintiff was capable of returning to his past work and reasoned as follows:

_____

[27] *Id.* at 808; *see also* SSR 00-4p ("When a [vocational expert] . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that [vocational expert] . . . evidence and information provided in the [*Dictionary*].").

[28] *Lamear v. Berryhill*, 865 F.3d 1201, 1205–06 (9th Cir. 2017); *see also* SSR 00-4p (requiring the ALJ to consider the *Dictionary* and SCO); SSR 83-14 (referencing the *Dictionary* and SCO).

The vocational expert classified the claimant's past work as a Surveillance-System Monitor, Dictionary of Occupational Titles #379.367-010, Specific Vocational Preparation 2, sedentary exertional requirement. As required by SSR 82-62, this work was substantial gainful activity, was performed long enough for the claimant to achieve average performance, and was performed within the relevant period.[29]

The ALJ went on to state further that:

As for performing the work as actually performed, the vocational expert noted that the claimant indicated in his work history report that the maximum weight he lifted was 100 pounds or more while he frequently lifted 10 pounds, but did not explain his lifting and carrying duties. The vocational expert also discussed that this description was not consistent with the claimant's other discussion of his job description of monitoring closed-circuit televisions, using a computer for reports, and using a phone for checking in (4E/2). Based on the claimant's job description in his disability report that he "spent most time monitoring cameras[;]" walked for 0.5 hours a day, stood for 0.5 hours a day, and sat for seven hours a day; and "did not typically have to carry anything" and carried less than 10 pounds (1E/4), the undersigned finds the claimant's past work as he actually performed it required even less standing and walking than the sedentary category, and therefore he is capable of performing the Surveillance-System Monitor as he actually performed it. Even if as he performed it the work required lifting as the claimant asserted, the claimant could still persist at the work as it is generally performed. Even if the claimant was more limited than found in the residual functional capacity above, the undersigned finds he could persist in his past relevant work, as it is generally

_____

[29] AR 29.

performed. The vocational expert testified it allowed for periodic changes in position.[30]

### 3.    <u>Vocational Expert Testimony</u>

The following exchange took place between the VE and the ALJ:

Q Do you require any additional information regarding [Plaintiff's] vocational background in the last 15 years before testifying?
A No. Seems pretty clear cut.
Q Please identify the occupations he's performed in the last 15 years.
A From what I found in the record, it looks like he was working as a Surveillance Monitor in security. The DOT number on that is 379.367-010. That's listed as a sedentary occupation, and it's unskilled, SVP: 2.[31]

The VE was then questioned by Plaintiff's attorney and the

following exchange took place:

EXAMINATION OF VOCATIONAL EXPERT BY ATTORNEY:
Q  .  .  . So first, I did want to ask you a little more about the past relevant work.  I found the work history report in 4E, is that what you were basing your classification on?
A Yes.
Q  Okay.  And I was just curious, I didn't hear whether, perhaps you did say it, but I didn't hear, if you said that it was performed more than sedentary as he performed it,

---

[30] AR 29-30.

[31] AR 62.

but I just noticed on this form, he says he lifted up to 100 pounds, he was walking three hours a day. I just want to make sure we're not classifying it, you know, as a wrong DOT code. So with that in mind that he was lifting quite a bit, walking more than three hours a day, I guess could you just kind of explain that discrepancy for me?

A   Yeah.  I didn't note that.  The main thing I saw was observing security cameras from that description. I didn't see walking three hours a day or lifting 100 pounds or more. And I guess I'd need an explanation of why he would be lifting 100 pounds or more on that. I did not have a chance to interview him or talk to him about this. It doesn't make sense, if he's being a security monitor, why he would be walking or lifting 100 pounds. I mean, I don't see where that fits in. If that's what he was doing, then I would up it to a regular Security Guard position, or whatnot, which would be light duty, and then it would require the walking. I can't imagine what he would be lifting that would be 100 pounds as a Security Guard. I mean, it just doesn't make any sense to me.

Q Okay. Well, he had mentioned patrol as well, and I don't know if that was a separate job, and maybe he'' done both separately, but I guess, what was the light duty Security Guard that you mentioned?

A That would be, the DOT code on Security Guard that's light duty is 372.667 038. It's light duty, and it's semi skilled, SVP: 3.[32]

4.   Analysis

Here, the ALJ accepted the VE's initial testimony that Plaintiff's

PRW was that of a sedentary surveillance monitor without considering

---

[32] AR 65-66.

his later testimony that he was initially mistaken and the position in question was that of a light duty security guard. This is clearly consequential error, because the ALJ's formulated RFC limited Plaintiff to sedentary work.

The ALJ ignored the evidence that Plaintiff described that when at his job he walked 3 hours per day and lifted as much as 100 pounds. The ALJ reasoned that Plaintiff said he frequently carried only 10 pounds and walked and stood for 3 minutes a day, which was less than sedentary.[33] But this was error because in his work history form Plaintiff stated that he walked for 3 hours a day, sat for 4 hours a day, lifted up to 100 pounds, stooped and kneeled for an hour each a day, and handled objects up to one hour a day.[34] What Plaintiff described does not fit the description of a job that is at the sedentary exertional level.

There was no attempt made by the ALJ at the hearing to clarify Plaintiff's actual PRW on the record, despite the fact that the VE was

_____

[33] AR 29.

[34] AR 264.

DISPOSITIVE ORDER - 16

present and able to testify.  Additionally, even after the VE retracted his testimony that Plaintiff's PRW was that of a surveillance monitor and instead was that of a light exertional security guard, the ALJ did not question the VE whether there were sedentary positions available in the national economy that would fit the hypotheticals given. Instead, the ALJ made his own determination post-hearing that such sedentary jobs existed.

The ALJ reasoned:

If the claimant had the residual functional capacity to perform the full range of sedentary work, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.24 and Rule 201.18. However, the claimant's ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. However, SSR 96-9p states that postural limitations or restrictions related to such activities as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling would not usually erode the occupational base for a full range of unskilled sedentary work significantly because those activities are not usually required in sedentary work. SSR 96-9p also states that few occupations in the unskilled sedentary occupational base require work in environments with extreme cold, extreme heat, wetness, humidity, vibration, or unusual hazards, and even a need to avoid all exposure to these conditions would not, by itself, result in a significant erosion of the occupational base. Therefore, the undersigned finds the non-exertional limitations in the

residual functional capacity would not significantly erode the occupational base for the range of sedentary work.[35]

Because work at the sedentary level is the most limited, and therefore the smallest base of available jobs, there is usually VE testimony obtained when an RFC limits a Plaintiff to the sedentary exertional level.  Rather than call a VE, the ALJ made his own findings, utilizing the direction of SSR 96-9p.  The ALJ erred, however, in his analysis of SSR 96-9p.  While he is correct that SSR 96-9p states that both postural and environmental limitations will not significantly erode the occupational base at the sedentary level, SSR 96-9p states specifically that this is not the case for pulmonary restrictions such as odors, dust, and gases and that when pulmonary restrictions are included in the RFC those cases call for vocational expert analysis and need to be evaluated on a case-by-case basis rather than a broad reading, such as that made by the ALJ.[36]

---

[35] AR 30-31.

[36] SSR 96-9p.

The error is of a particular significance in this case because the ALJ specifically found that Plaintiff had the severe impairments of asthma and COPD.[37] It was in order to account for Plaintiff's asthma and COPD that the ALJ included into the formulated RFC a limitation to concentrated exposure to pulmonary irritants, and for that reason the limitation cannot be set aside or deemed inconsequential.[38] Because Plaintiff suffered from two severe pulmonary impairments and the formulated RFC included a limitation regarding pulmonary irritants, this required the ALJ to obtain VE testimony regarding that issue. The ALJ failed to obtain the VE testimony required.  This error is consequential, and remand is warranted to obtain clarifying testimony from a vocational expert.

On remand, the ALJ is directed to obtain VE testimony as to both the proper classification of Plaintiff's PRW and, if a step-five finding is necessary, the effect of all Plaintiff's limitations on his ability to engage in substantial gainful activity.

---

[37] AR 20.

[38] AR 24.

**B.    Step two: direction to develop the record on remand.**

Plaintiff argues that the ALJ erred in finding that Plaintiff's

mental impairments were not severe. Because the Court has already

concluded that remand is warranted, it will only briefly address the

ALJ's step-two error.

The Court notes that while there was a consultative examination

obtained regarding Plaintiff's physical impairments, no similar

examination was scheduled to determine the severity of his mental

impairments.  This leaves a void in the record and constitutes

consequential error because the medical record establishes that

Plaintiff at least at one point during the relevant period had a severe

mental impairment.

On July 20, 2021, Plaintiff presented to Timothy Ausink,

PASUP.[39] Plaintiff reported he had been very depressed over the last 6-

---

[39] AR 366.

12 months.[40]  On examination, PA Ausink notes that Plaintiff appeared anxious and depressed and prescribed venlafaxine.[41]

On August 12, 2021, Plaintiff was examined by David Morgan, PhD, at the request of Washington Department of Social and Health Services.[42] Dr. Morgan completed a thorough and detailed report which included a clinical interview providing psychosocial history, treatment history, educational/work history, and activities of daily living; clinical findings; diagnosis; mental status examination observations; medical source statement; and prognosis.[43]

Dr. Morgan noted that Plaintiff reported a history mental illness worsening over time, as well as passive suicidal thoughts and feelings of being overwhelmed.[44] Dr. Morgan noted clinical findings of depression with depressed mood, anhedonia, lack of sleep, fatigue,

---

[40] AR 368.

[41] AR 369.

[42] AR 340-344.

[43] *Id.*

[44] AR 340.

feelings of worthlessness, and poor concentration and opined that it was daily and moderate in severity.[45] On examination, Dr. Morgan found that Plaintiff had normal speech and affect, depressed mood, limitations in memory and concentration, normal perception and fund of knowledge, and normal judgement and insight.[46]

Dr. Morgan opined that Plaintiff would have moderate limitations in understanding, remembering, and persisting in tasks; performing activities within a schedule; learning new tasks, performing tasks without special supervision; adapting to changes in a work setting; asking simple questions; communicating or performing in a work setting; maintaining appropriate behavior; completing a normal work week or workday; and setting realistic goals or planning independently.[47] Dr. Morgan opined that the limitations would last 8 months.[48]

---

[45] AR 341.

[46] AR 343-344.

[47] AR 341-342.

[48] AR 342.

On November 24, 2021, Plaintiff was examined by David Krueger, MD, regarding cardiovascular symptoms.[49] Dr. Krueger noted that he had problems with short-term memory as a result of sleep apnea and suffered from depression and anxiety as well.[50]

On December 8, 2021, Plaintiff presented for follow-up with Jennifer Wilson, ARNP.[51]  He was noted to suffer from depression and anxiety.[52]

On February 9, 2022, Plaintiff presented for follow-up with ARNP Wilson.[53] ARNP Wilson noted that Plaintiff presented with complaints of anxiety, depression and nicotine addiction.[54] She noted that Plaintiff reported depression with a fluctuating loss of interests.[55] Plaintiff

---

[49] AR 4134.

[50] AR 416.

[51] AR 426.

[52] *Id.*

[53] AR 421.

[54] AR 423.

[55] *Id.*

reported difficulty sleeping, feelings of hopelessness and helplessness, but no changes in appetite or difficulty concentrating.[56] On mental status examination, Plaintiff had an anxious mood and affect, but had intact memory, attention, thought process, and fund of knowledge.[57] He complained of worsening depression and anxiety.[58] ARNP Wilson diagnosed moderate recurrent major depression, noting, "depression symptoms include depressed mood most of the day for the past two weeks, loss of Interest In activities, hypersomnia, fatigue, feelings of worthlessness and inappropriate guilt, significant weight gain, and recurrent thoughts of being better off dead. These symptoms cause significant impairment and there is no evidence of another medical, psychological, or substance use disorder to better explain symptoms."[59] She also diagnosed generalized anxiety disorder, noting "[a]nxiety symptoms include excessive anxiety and worry that occur more days

---

[56] *Id.*

[57] AR 424.

[58] *Id.*

[59] AR 425.

than not for the last 6 months, difficulty controlling worry, feeling keyed up and on edge, feeling easily fatigued, and irritability."[60]

On March 17, 2022, Plaintiff presented to Sunny Bhaskaran, MD, for follow-up for the results of sleep testing.[61] Dr. Bhaskaran noted that Plaintiff had been diagnosed previously with narcolepsy.[62] He also noted on examination that Plaintiff was positive for depression and panic attacks.[63]

The ALJ acknowledged that Dr. Morgan opined Plaintiff had moderate limitations in many areas of function but noted that Dr. Morgan opined the limitations would last at least 8 months.[64] But the ALJ's finding that this supported a conclusion that Plaintiff was not disabled for a period of 12 months is flawed.  First, Dr. Morgan did not examine Plaintiff at the request of the Commissioner, but rather at

---

[60] *Id.*

[61] AR 459.

[62] AR 461.

[63] AR 462.

[64] AR 21, quoting 342.

the request of DSHS, so the issue presented to him was not whether Plaintiff was expected to have the opined limitations for a period of 12 months considered by the Commissioner but whether they would exist for a period of 6 months, as considered by DSHS.  Additionally, there is no indication that Plaintiff was evaluated after the 8-month period to determine whether the limitations continued.

On remand, the Court directs that the ALJ is to develop the record by either obtaining a psychological consultative examination or scheduling a medical expert to testify.

## C.     Symptom Reports: This issue is moot.

Plaintiff argues the ALJ failed to properly assess his subjective complaints.  Because the Court has remanded the case with direction that the ALJ should further develop the record, the ALJ will be required to re-evaluate Plaintiff's subjective complaints.

## D.     Medical Opinions:  This issue is moot.

Plaintiff argues the ALJ failed to properly evaluate the medical opinion evidence.  Because the Court has remanded the case with direction that the ALJ should further develop the record to obtain

medical opinion evidence, the ALJ will be required to reassess the medical opinions.

## E.    Remand for Further Proceedings

Plaintiff submits a remand for payment of benefits is warranted. The decision whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the court."[65] When the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings."[66]

The Court finds that further development is necessary for a proper disability determination. Here, it is not clear what, if any, effect Plaintiff's mental impairments have on his ability to perform basic

_____

[65] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

[66] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke* 379 F.3d at 595 ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

work tasks. It is also unclear what the exact classification of Plaintiff's PRW should be Therefore, the ALJ should take testimony regarding Plaintiff's past work and obtain testimony from a vocational expert to classify his PRW, consider whether a psychological consultative examination should be scheduled or whether testimony should be received from a medical expert pertaining to Plaintiff's mental impairments, consider any additional evidence presented, and make findings at each of the five steps of the sequential evaluation process.

## IV.   Conclusion

Accordingly, **IT IS HEREBY ORDERED**:

1.   The ALJ's nondisability decision is **REVERSED**, and this matter is **REMANDED** to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

2.   The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 8 and 9,** enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

1    IT IS SO ORDERED. The Clerk's Office is directed to file this

2  order and provide copies to all counsel.

3    DATED this 19th day of May, 2025.

_____
EDWARD F. SHEA
Senior United States District Judge